# Exhibit 1

# ERIK B. CHERDAK

149 THURGOOD STREET
GAITHERSBURG, MARYLAND 20878
PH. 202.330.1994
EBCHERDAK@GMAIL.COM

January 26, 2024

## TRANSMITTAL LETTER

TO:     The Clerk's Office
        Superior Court of the District of Columbia
        Civil Division
        510 4th Street, NW
        Washington DC 20001

RE:     NEW CASE: *Erik Benjamin Cherdak v. McDermott, Will & Emery LLP*, Case No.: TBD

Please find enclosed for official, ELECTRONIC filing in this Honorable Court the following documents for which EMERGENCY INJUNCTIVE RELIEF is being sought by motion:

1.  A Complaint with Exhibits 1, 2 and 3;

2.  A Summons as to the single, above-named Defendant;

3.  A Civil Case Information Sheet; and

4.  A Combined MOTION and BRIEF IN SUPPORT for a Temporary Restraining Order with Exhibit 1 and a Proposed Order attached thereto.

All fees have been PAID using the Court's payment system ($120.00).

The undersigned, Plaintiff pro se, has communicated with JIC Law Clerk Mr. Paul Thorn prior to making this filing. An EMERGENCY MOTION for TRO to avoid immediate and irreparable harm has been filed (Item No. 4 above). Please report this filing with all due dispatch and on an EMERGENCY BASIS to JIC of this Court and to the Judge-In-Chambers law clerks so that this matter may be heard as soon as possible. Actions threatened by the Defendant will bring about immediate and irreparable harm and this matter should be heard on or before Wednesday, January 31, 2024. Plaintiff has been informed that a virtual hearing will be set in to address Plaintiff's Emergency Motion. Counsel for the Defendant has been served with all of the above papers and Plaintiff is keeping Defense Counsel apprised as to all events and actions of the Court so as to facilitate an inter-parties evaluation/hearing on Plaintiff's Emergency Motion should the Court not act ex parte on Plaintiff's Verified Papers. *See* D.C. R. Civ. P. Rule 65. Please and kindly advise Plaintiff at 202.330.1994 should the Court require any additional information in setting in a virtual hearing or otherwise. Contact information for Defense Counsel is found on the first page and elsewhere in Plaintiff's Moiton for the Court's information.

Respectfully submitted,

Erik B. Cherdak

Cc:     Mr. J. Christian Nemath (via email as agreed between the parties)

# Superior Court of the District of Columbia

## CIVIL DIVISION - CIVIL ACTIONS BRANCH

### INFORMATION SHEET

Erik B. Cherdak
_____
Plaintiff(s)

vs

McDermott, Will & Emery LLP
_____
Defendant(s)

Case Number: _____

Date: January 25, 2024

☐ One of the defendants is being sued in their official capacity.

Name: *(Please Print)*
Erik B. Cherdak

Firm Name:

Telephone No.:     DC Bar No.:
202.330.1994

Relationship to Lawsuit

☐ Attorney for Plaintiff
☑ Self (Pro Se)
☐ Other: _____

TYPE OF CASE:  ☑ Non-Jury     ☐ 6 Person Jury     ☐ 12 Person Jury
Demand: $--N/A-- at this time.     Other: TRO, Injunctive Relief, Equity

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____  Judge: _____  Calendar #: _____

Case No.: _____  Judge: _____  Calendar #: _____

---

NATURE OF SUIT:     *(Check One Box Only)*

**CONTRACT**

☑ Breach of Contract
☐ Breach of Warranty
☐ Condo/Homeowner Assn. Fees
☐ Contract Enforcement
☐ Negotiable Instrument

**COLLECTION/INS. SUB**

☐ Debt Collection
☐ Insurance Subrogation
☐ Motion/Application for Judgment by Confession
☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**

☐ Breach of Contract
☐ Discrimination
☐ Wage Claim
☐ Whistle Blower
☐ Wrongful Termination

**REAL PROPERTY**

☐ Condo/Homeowner Assn. Foreclosure     ☐ Ejectment     ☐ Other
☐ Declaratory Judgment     ☐ Eminent Domain     ☐ Quiet Title
☐ Drug Related Nuisance Abatement     ☐ Interpleader     ☐ Specific Performance

☐ **FRIENDLY SUIT**
☐ **HOUSING CODE REGULATIONS**
☐ **QUI TAM**
☐ **STRUCTURED SETTLEMENTS**

**ADMINISTRATIVE PROCEEDINGS**

☐ Administrative Search Warrant
☐ App. for Entry of Jgt. Defaulted Compensation Benefits
☐ Enter Administrative Order as Judgment
☐ Libel of Information
☐ Master Meter
☐ Petition Other

☐ Release Mechanics Lien
☐ Request for Subpoena

**MALPRACTICE**

☐ Medical – Other
☐ Wrongful Death

**AGENCY APPEAL**

☐ Dangerous Animal Determination
☐ DCPS Residency Appeal
☐ Merit Personnel Act (OEA)
☐ Merit Personnel Act (OHR)
☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**
- ☐ Currency
- ☐ Other
- ☐ Real Property
- ☐ Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- ☐ Birth Certificate Amendment
- ☐ Death Certificate Amendment
- ☐ Gender Amendment
- ☐ Name Change

**TORT**
- ☐ Abuse of Process
- ☐ Assault/Battery
- ☐ Conversion
- ☐ False Arrest/Malicious Prosecution
- ☐ Libel/Slander/Defamation
- ☐ Personal Injury
- ☐ Toxic Mass
- ☐ Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**
- ☐ Accounting
- ☐ Deceit (Misrepresentation)
- ☐ Fraud
- ☐ Invasion of Privacy
- ☐ Lead Paint
- ☐ Legal Malpractice
- ☐ Motion/Application Regarding Arbitration Award
- ☐ Other - General Civil

- ☐ Product Liability
- ☐ Request for Liquidation
- ☐ Writ of Replevin
- ☐ Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- ☐ Asbestos

**MORTGAGE FORECLOSURE**
- ☐ Non-Residential
- ☐ Residential

**STATUTORY CLAIM**
- ☐ Anti – SLAPP
- ☐ Consumer Protection Act
- ☐ Exploitation of Vulnerable Adult
- ☐ Freedom of Information Act (FOIA)
- ☐ Other

**TAX SALE FORECLOSURE**
- ☐ Tax Sale Annual
- ☐ Tax Sale Bid Off

**VEHICLE**
- ☐ Personal Injury
- ☐ Property Damage

☐ **TRAFFIC ADJUDICATION APPEAL**

☐ **REQUEST FOR FOREIGN JUDGMENT**

_____
Filer/Attorney's Signature
PROSE

_____
1/26/2024
Date

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Erik B. Cherdak, Plaintiff Pro Se

_____
                                                    Plaintiff
                        vs.

McDermott, Will & Emery LLP                                    Case Number _____

_____
                                                    Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Erik B. Cherdak (appearing Pro Se)
_____                    *Clerk of the Court*
Name of Plaintiff's Attorney
149 Thurgood Street
_____        By _____
Address                                                                    Deputy Clerk
Gaithersburg, Maryland 20878
202.330.1994
_____        Date _____
Telephone
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Erik B. Cherdak, Plaintiff Pro Se

_____
                                                                Plaintiff

                                VS.

McDermott, Will & Emery LLP                                              Case Number _____

_____
                                                                Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Erik B. Cherdak (appearing Pro Se)
_____            *Clerk of the Court*
Name of Plaintiff's Attorney
149 Thurgood Street
_____            By _____
Address                                                                                           Deputy Clerk
Gaithersburg, Maryland 20878
202.330.1994
_____            Date _____
Telephone
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                                    Super. Ct. Civ. R. 4

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION
AT WASHINGTON**

Erik B. Cherdak
149 Thurgood Street
Gaithersburg, Maryland 20878
202.330.1994
ebcme@me.com,

      *Plaintiff,*

      *v.*

McDermott, Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531 202.756.8000
www.mwe.com,

      *Defendant.*

Case No. _____

**PLEASE RUSH TO:
JUDGE-IN-CHAMBERS**

## PLAINTIFF'S VERIFIED COMPLAINT

*At the outset and to inform this Honorable Court,* this Complaint was prepared and has been filed with all haste to permit the Plaintiff to seek immediate and emergent injunctive relief in the form of a Temporary Restraining Order so as to maintain the *status quo* in the context of Defendant's threatened, announced and anticipated material breach of an established employment severance contract binding the parties and under which Defendant is contractually obligated to arrange, provision, pay for and administer certain health insurance benefits to the Plaintiff and his family under a group-based health insurance plan facilitated through Blue Cross Blue Shield of Illinois. Despite Plaintiff's good faith efforts to bring reason to Defendant's clandestine actions to strip Plaintiff and his family of their health insurance benefits, Defendant has threatened to terminate Plaintiff's health insurance for which such threatened action constitutes nothing less than anticipatory material breach that already has caused and that will continue to cause irreparable harm for which there is and can be no adequate remedy at law. This Court's intervention is being urged in a   Motion for a Temporary Restraining Order filed contemporaneously herewith in compliance with D.C. Rule of Civ. P. Rule 65 upon facts

and circumstances in which Defendant has announced its wrongful intent to breach the aforementioned and existing contract binding the parties and so as to intentionally and threaten Plaintiff and to cause irreparable harm and injury for which there is no adequate remedy at law—especially in view of current circumstances known to Defendant and concerning Plaintiff's impending surgery, medical care and corresponding medical treatment already in which Plaintiff has been in the midst of addressing and as already approved by the underlying insurance carrier (Blue Cross Blue Shiel of Illinois) in relation to Plaintiff's major surgery currently set to take place on February 8, 2024 at Georgetown University Hospital ("GUH") in Washington, DC for which Plaintiff is expected to need significant pre- and post-surgical in-patient care.  Defendant has threatened its material breach to terminate Plaintiff's insurance coverage and health care benefits in wholesale fashion *without* any concern for Plaintiff's health status.  Defendant's threatened, unilateral, and anticipatory material breach of the Parties' operative and executory contract absolutely supports a breach of contract action under District of Columbia law.

Plaintiff reserves the right to amend this Complaint, to include or withdraw claims and causes of action, to alter and/or enhance his ultimate theories of recovery to be urged at trial on the merits, and to further plead as this case proceeds and upon due and proper discovery being exchanged between the parties.  Plaintiff does not seek a jury trial at this time and upon this Compliant as originally filed in this Court as he seeks only equitable injunctive relief at this time.

*Accordingly*, in and for this his Complaint, Plaintiff hereby pleads as follows:

## THE PARTIES:

1.      Plaintiff is a Maryland Resident having a residency address at 149 Thurgood Street, Gaithersburg, Maryland 20878.  Plaintiff was employed by the Defendant and paid for and received company-provided and paid-for employment benefits including, and not limited to, health insurance benefits about which the instant case revolves.

2.      Defendant McDermott, Will & Emery PLLC is a multi-national law firm with a central and operating principal place of business located in Washington, D.C. at The McDermott Building, 500 North Capitol Street, NW, Washington, DC 20001-1531 (the MWE-DC Office") with a telephone number of 202.756.8000 and virtual online website at www.mwe.com. Defendant's General Counsel, Ms. Linda Doyle, regularly sits in the law firm's Chicago, Illinois but regularly and routinely visits and works out of the DC Office

2

at the aforementioned specified address. As to the core of operative facts in this case and, in particular, in terms of communications regarding the claims and dispute set forth herein, Plaintiff has engaged in bi-directional communications in which Ms. Doyle has been a recipient of all such communications and, as such, she is aware and has operated as the Defendant's general counsel and legal representative in connection with the instant case. Defendant advertises its Washington, DC office as a central hub for its national and global operations in representing the law firm's clients by stating: "Our Washington, DC, office has a long history of growth that allows us to remain a step ahead of emerging legal, business and regulatory trends and to meet all our clients' ongoing needs. From the earliest years in the District, we have developed a reputation for providing effective client representation before government agencies, congressional committees, the executive and legislative branches, and federal courts."

3.      Together, the Plaintiff and the Defendant shall be referred to herein as the "Parties." Where context may refer to either the Plaintiff or the Defendant, the singular term "Party" may be used with no limitation intended.

## JURISDICTION AND VENUE:

4.      Jurisdiction (including both subject matter and *in personam*) is all due and proper as the core of operative facts relates at least to a contract formed and materially breached by the Defendant in and under the laws of the District of Columbia, respectively;

5.      Venue is proper in this forum, judicial district and Court as Defendant operates its major office location in the District of Columbia where the contract in-suit was formed, materially breached, wherein that contract continues to be unreasonably repudiated and wherein the relief sought contemplates injunctive relief in a matter contemplating corresponding value of more than the jurisdictional amounts required for subject matter jurisdiction in this Honorable Court.

## FACTS:

The following facts set forth in the numbered paragraphs below are at the core of the controversy for which this case was commenced:

6.      Because Plaintiff prepared the instant Complaint on an urgent basis and to seek emergent injunctive relief pertaining to his underlying claim for breach of contract in view of Defendant's announced anticipatory material breach of contract of an extant and executory contract under which Defendant promised to arrange, pay for, provision, and

3

administer certain health insurance benefits upon severance of an employment relationship between Plaintiff and Defendant that terminated in 2017, the facts set forth herein are intended to provide short and plain statements sufficient to provide notice as to Plaintiff's case-in-chief, to inform Defendant and the Court of his claims and causes of action, and to set forth necessary facts and circumstances that will enable the Court to render emergency, temporary relief to maintain the *status quo* and to avoid further infliction of irreparable harm for which no adequate remedy at law exists under the circumstances as currently known and without the benefit and aid of discovery yet to be propounded by the Parties;

7.      Initially and in first a written contract entered into 2016 and upon Plaintiff's commencement of employment with the Defendant in December 2016 and, then later, during severance negotiations taking place in person in Washington, DC in August 2017, Plaintiff and Defendant formed a second binding, executory contract under which Plaintiff fully performed without fault or breach of any kind. Essentially and elementally, under the Parties' second contract of severance (the contract in-suit), Plaintiff agreed to a certain severance arrangement in exchange for Defendant's promises and substantial performance of contractual covenants, obligations and duties related to Defendant arranging, provisioning, and administering health insurance benefit coverage for Plaintiff and his immediate family. In August 2017, the Parties' contract of severance became mutually binding and, accordingly, Defendant provided such health insurance benefits without fail (with only limited administrative hiccups over the years that were rectified in the normal course between the Parties and which do not form any basis of Plaintiff's claims set forth herein). One such health benefit to be provided indefinitely by the Defendant in exchange for severance-based consideration paid and provided by Plaintiff to Defendant under the Parties' mutually agreed covenants and contractual obligations agreed to between the parties in their contract of severance, was Defendant's obligation to arrange for, provision, and wholly pay for Plaintiff to maintain his health insurance benefits including, and not limited to, major medical insurance, dental insurance, vision and eye-care benefits and prescription drug coverage—for which Plaintiff received his health insurance benefits in part as contracted-for to date.

8.      In accordance with Defendant's established and agreed-upon and recognized contractual obligations and duties owed to Plaintiff, Plaintiff has consistently detrimentally relied upon the contract of severance binding the parties and has held and

4

used his health insurance plan since August 2017 to date without any interruption caused by Plaintiff and Plaintiff has fully complied with the terms and conditions imposed on such health insurance benefits including, but not limited to, maintaining annual check-ins with the insurance carrier (BCBS of Illinois) and periodic written communications concerning coverage matters with personnel in Defendant's Human Resources "HR" department. *See* Exhibit 1 (Email from Defendant's HR department sent upon request by Plaintiff). At no time did Defendant or its HR staff ever indicate an intention to cancel or terminate Plaintiff's health insurance benefits provided per the terms of the Parties' contract until December 2023.

9.      Plaintiff and his family have been insured under Defendants' administered and provisioned health insurance plan in accordance with said contract of severance to provide Plaintiff and his family with such health insurance benefits from August 2017 to date. Plaintiff and his family members have fully complied with all terms and conditions of Plaintiff's health insurance benefits and plan and, on many occasions, have been charged significant expenses for service-based extra costs, large deductibles, etc. in connection with claims-made under Plaintiff's health insurance benefits and coverage plan in accordance with BCBS of Illinois guidelines established between Defendant and BCBS of Illinois without any involvement of the Plaintiff.  During formation of the contract of severance that took place in August 2017, Defendant made an offer of health insurance benefits, Plaintiff accepted and counter promised on terms of severance, and consideration (insurance and counter promises and forbearance from suit, releases, etc. were fully supported and exchanged) were made between the Parties on which Plaintiff detrimentally relied and on which the Defendant benefitted.

10.     In December 2023 and without any advance notice to the Plaintiff, Defendant acted in a clandestine way to self-servingly and knowingly arrange for the termination of Plaintiff's health insurance benefits effective December 31, 2023 in clear violation and material breach of the Parties' contract of severance.  Plaintiff learned of Defendant's wrongful and clandestine actions from Blue Cross Blue Shield of Illinois in December 2023 without ever receiving any notice from Defendant as administrator for Plaintiff's health insurance benefits and coverage—BCBS-Illinois being the actual insurance carrier of the plan as arranged and provisioned by the Defendant. The information provided by BCBS-IL sought in Plaintiff's own use of his online "Member Portal" was learned by

5

Plaintiff for the first time and upon his own review of 2023 claims-made in calendar year 2023 while accessing his online Member Portal.

11.     As he had communicated about his health insurance benefits with Defendant's Human Resources ("HR") Department on several occasions over the years since 2017 in regular management of Plaintiff's contemplated health insurance benefits, Plaintiff reached out to Defendant's head of "HR" (Ms. Sophia Smith) and Plaintiff also was informed that Defendant would immediately reinstate his insurance benefits—as Defendant's HR personnel informed Plaintiff that it was a "mistake to terminate [Plaintiff's] benefits" and "it was wrongful for Defendant to arrange for any termination of benefits" as they had been promised and provided since 2017 under the terms of the Parties' contract of severance.

12.     Over the 2023-2024 holiday season spanning December 2023 through January 2024 (to date), Defendant's benefits coordinator located Philadelphia, PA assured Plaintiff that his and his family's health insurance benefits would not be terminated—only for Plaintiff to later learn again from BCBS-IL that Defendant actually misrepresented its knowingly false and fraudulent story that it would not terminate Plaintiff's health insurance benefits and, instead, that Defendant had *again* arranged to cancel Plaintiff's health insurance benefits to be effective as of January 31, 2024.

13.     Plaintiff and his family members have relied on Plaintiff's insurance benefits received under contract between the Parties, have spent significant sums in complete reliance on those benefits, have participated in diabetes management programs offered under Plaintiff's health insurance benefits for which Plaintiff is an active member as of the filing of this Complaint and commencement of the instant action.  Such diabetes management, for example, and other MWE health benefits specifically connected with Plaintiff's particular health insurance benefits would be abruptly and harmfully terminated if Defendant is allowed to terminate Plaintiff's health insurance benefits as a material breach of the Parties' contract of severance.  For example, and not by way of limitation, Plaintiff is a user of the Defendants' health program administered through OMADA and BCBS-IL to manage diabetes which requires daily and other regular diabetes care—a vital component of Plaintiff's diabetes management and education overseen by a personal representative dedicated to Plaintiff concerned with his particular care. Any termination of Plaintiff's health insurance benefits would cause irreparable harm Plaintiff and his family to such diabetes management through OMADA and BCBS-

6

IL and would not be replaceable under any other insurance program or policy. Diabetics like Plaintiff greatly benefit from OMADA's medical oversight and care management and coaching and that relationship between OMADA and Plaintiff would be irreparably harmed and abruptly severed if the Defendant is allowed to abruptly cancel Plaintiff's health insurance benefits.

14.    As Defendant has been fully informed, Defendant's wrongful actions affecting and disrupting Plaintiff's health insurance benefits came at a time when Plaintiff is presently in the midst of significant surgical and related medical care for which Plaintiff relies on particular benefit features covered by his insurance benefits on which he has detrimentally relied for years—benefit features that cannot be replicated through any other health insurance plan either through any health insurance exchange or through any other employer sponsored program. If Defendant is allowed to carry through with its announced and anticipatory material breach of contract, Plaintiff will be forced to delay necessary and required surgery, arrange for lower-quality insurance coverage that does not cover the needs of the Plaintiff (and his family members) who have detrimentally relied, budgeted, and has sought and received medical care.  If Defendant is allowed to wrongfully terminate/cancel Plaintiff's insurance benefits, Plaintiff's medical care to be continued and carried out between February 8, 2024 through February 15, 2024 will be interrupted, disrupted and delayed directly and proximately causing Plaintiff to undergo additional and extensive pain and suffering related to abdominal reparative surgery  in addition to significant disruptions to surgical schedules of the members and organizations within Plaintiff's care team at Georgetown University Hospital GUH. Plaintiff is scheduled to undergo major surgery at GUH on February 8, 2024 for which GUH has already been informed, again without Plaintiff's knowledge, that his health insurance benefits will be terminated by the Defendant as of January 31, 2024— information for which Plaintiff never authorized Defendant to disseminate directly to his health care providers.

15.    Defendant's acts to announce its unjustified and wrongful termination of Plaintiff's health insurance benefits would operate as anticipatory material breaches of the Parties' contract of severance formed in August 2017, would work irreparable harm if not stopped from occurring, would absolutely amount to a clear cut material breach of contract for which Plaintiff (and his family) are due remedies and the right to receive emergent injunctive relief at this time.  There are no mitigating factors, no rights to breach,

7

and no other defenses such as prior material breach or otherwise on which Defendant may rely to claim a right to be discharged under the Parties' contract of severance entered into in August 2017.   Plaintiff has fully complied with his contractual obligations; Defendant has not.

16.   Importantly, Plaintiff's claim(s) and remedies in-suit are borne from Defendant's material breaches of the Parties' contract of severance.   There is no determination of benefits action/appeal/determination that is under review as the health insurance benefits contemplated in this case relate to promises to provide such insurance under a separate contract of severance formed leading up to and in August 2017.   This case stems from breach of contract and material breaches of promises and failures to provide the consideration the Defendant promised to the Plaintiff in August 2017 regardless of any argument Defendant may make related to this case being one borne under ERISA or other law—Defendant are wrong as its promise to provide insurance benefits to Plaintiff (and his family) came about in arms' length negotiations *inter alia* based on Plaintiff's forbearance from suit for wrongful discharge, failure to perform based on undisclosed and fraudulent concealment of facts necessary for Plaintiff to thrive in Defendant's organization (*e.g.*, a failure to disclose known conflicts with extant clients) and failure to provide necessary and promised resources on commencement of employment in 2016. But for the breach of contract that is the subject of Plaintiff's initial claims urged herein, there would be no suit just as there are no ERISA or other matters governing this case and, in particular, no requirement for any administrative remedy exhaustion as this case concerns the contractual obligation to provision health plan benefits generally and does not concern a determination for provision of specific medical/health service needs related to any medical determination made by any medical professional.   Defendant willfully and maliciously acted and plans to further act to unlawfully cancel and terminate Plaintiff's promised health insurance benefits without just cause and in clear violation and material breach of the Parties' contract of severance.   ERISA does not require Plaintiff to exhaust any internal or other administrative remedies before filing suit—such as the instant case. To the contrary, a beneficiary under a particular benefit seeking a determination or benefits on a substantive level under an ERISA plan must first exhaust administrative remedies, unless doing so would be futile. *See Amato v. Bernard*, 618 F.2d 559 (9th Cir. 1980). Courts have made it clear that failure to exhaust acts as a bar only if the plan documents expressly mandate exhaustion prior to seeking judicial

review. *See e.g., Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1298 (9th Cir. 2014). The instant case arises from the mutual promises made in a valid and binding contract formed between the Parties in August 2017 and ***not*** as a matter arising as a health benefit determination under any particular plan. Put another way, this case arises as a result of Defendant's breach in failing to provide "a" health benefits package/plan to benefit Plaintiff and his family instead of any denial of actual benefit/medical coverage urged for payout under such a health benefits package. A letter in Exhibit 2 hereto demonstrates Defendant's desperate, abusive and fraudulent attempt to mislead the Plaintiff into a false belief that ERISA somehow applies (and it clearly does not) so as to force Plaintiff into pursuing wasteful process before the U.S. Government or to consent to jurisdiction in a federal or state court in Illinois. ERISA does not apply in this case as, on information and belief, no determination of medical necessity has been made or is involved in considering Defendants' to provide health insurance, dental and other benefits as it agreed to provide in forming the Parties' contract of severance effective and binding as of August 2017 on the mutual promises and consideration flowing and covenanted by and between the Parties. The letter from Defendant was not received by Plaintiff until January 16, 2024 apparently due to an email sending issue on Defendant's side of that communication.

17.     Additionally, in the days leading up to commencement of the instant case, Defendants asserted to Plaintiff that Defendant made errors in conducting COBRA compliance and that communications by Plaintiff to Defendant over the years were in accordance with some kind of recognition of a COBRA plan. At no time did Defendant ever inform Plaintiff of any COBRA availability, require Plaintiff to enroll in any COBRA plan, or otherwise conduct any business related to Plaintiff being required to obtain COBRA coverage of any kind. The health insurance benefits provided to Plaintiff as contemplated in-suit were contractually promised by Defendant for which Plaintiff provided significant post-employment consideration and for which Defendant is now in material breach of its promises that have for years (and far beyond any COBRA period) been detrimentally relied upon by the Plaintiff and his family.

## CLAIMS AND CAUSES OF ACTION:

## COUNT I – A CLAIM AND CAUSE OF ACTION FOR BREACH OF CONTRACT
### (Base, inter alia, on Defendant's Actual and Threatened Acts of Material Breach)

18.     In the interest of brevity and to not repeat material facts stated *supra*, Plaintiff incorporates herein those facts already articulated that support and make out Plaintiff's Count I for Breach of Contract.  Of course, Plaintiff reserves the right to Amend this pleading to include additional facts as the same are learned through appropriate discovery to be engaged in between the parties in the normal course of adjudication of this case.

19.     As mentioned in the above-stated material facts, a contract was formed on mutual oral and written representations, promises, and covenants by the Parties, respectively, and, in particular, Defendant made promises to Plaintiff to arrange, provision, and pay for Plaintiff's health insurance benefits (at no cost to Plaintiff) including a full pallet of health insurance benefits to Plaintiff his and the benefit of his family in August 2017. Plaintiff maintained such health insurance benefits in full force and effect since the contract formed between the parties was made mutually binding and effective in August 2017.

20.     In December 2023, Plaintiff learned on his own that Defendant engaged in a clandestine plan and scheme to terminate and cancel Plaintiff's insurance policy and corresponding benefits without any prior or any other notice to inform the Plaintiff of Defendant's wrongful intentions.  Plaintiff learned of such anticipatory and willful breach of the Parties' contract upon accessing the BCBS-IL website and personal dashboard of Plaintiff's online "Member Portal" associated with Plaintiff's health insurance benefits.  *See* Exhibit 2 (a copy of a website as printed by Plaintiff on January 26, 2024 showing coverage for Plaintiff and all of his immediate family members.

21.     While attempting to perfect a ruse to dupe Plaintiff into a false belief that Defendant had some kind of concocted right to terminate Plaintiff's health insurance benefits, Defendant wrote to Plaintiff on January 23, 2024 advising that it will continue with its wrongful, malicious threat to terminate Plaintiff's health insurance benefits—a writing representing a clear-cut manifestation of anticipatory material breach of contract in contravention of law.  *See* Exhibit 3.

22.    Defendant's (anticipatory) material breach has caused harm, pain and suffering, disruption to medical health coverage, disruption in services-in-progress and continues to present a situation of clear and further irreparable harm for which Plaintiff has no adequate remedy at law, no ability to obtain corresponding parallel-type replacement coverage, no ability to maintain insurance benefits presently being used by Plaintiff (e.g., specialized diabetes care and management run though Plaintiff's health insurance benefits) and his family members, and no ability to avoid further unwarranted disruptions to Plaintiff's and the care of each of his family members—and certainly not in a manner consistent with that level of health insurance benefits on which Plaintiff and his family have detrimentally relied in managing their healthcare needs and care.

23.    Because Plaintiff and his family members are faultless and upon their good faith reliance on Defendant's promises concerning Plaintiff's health insurance benefits, Defendant should be held to continue to comply with its promises and covenants and to do so and to contractually perform its contractual and other duties without cost to the Plaintiff as has been the case as a direct result of the mutual promises and corresponding consideration flowing between the parties upon formation of the Contract in-suit.

24.    Defendant's material breaches to date and its anticipatory material breaches Defendant has and continues to threaten, Plaintiff has been harmed and is entitled to remedies in connection with Defendant's material breaches and other wrongful conduct.

## PRAYER FOR RELIEF:

Upon Plaintiff's Claims set forth above at the time of commencement of the instant action, Plaintiff currently prays for the following relief:

A.  That Defendant be ordered to engage in specific performance of its contractual obligations and duties in accordance with the Parties' contract of severance formed in August 2017 and to continue to arrange, provision and pay for all health insurance benefits for Plaintiff (without cost to the Plaintiff) so as to benefit Plaintiff and all members of his immediate family;

B.  That Defendant and its agents and representatives be ordered to forbear and to not cancel or otherwise terminate Plaintiff's health insurance benefits and without any disruption and/or interruption in service already planned and/or ongoing;

C.  That Plaintiff be awarded any and all costs of suit and reasonable attorneys' fees as may be determined by the Court;

11

D. All injunctive and equitable relief the Court deems just and proper under the circumstances; and

E. All other relief deemed just and proper by the Court.

## RESERVATION OF RIGHT TO A JURY TRIAL:

Although Plaintiff is seeking only equitable and injunctive relief in this Court and before a JIC-Judge-in-Chambers at the time of commencement of this lawsuit, Plaintiff reserves the right to request trial by jury should the need and ability arise—such as in connection with any claims for damages that may be asserted by the Plaintiff and/or counterclaims that may be wrongfully asserted by the Defendant in this case.

*It is therefore,*

Respectfully submitted,

Erik B. Cherdak      Date:
149 Thurgood Street, Gaithersburg, Maryland 20878, Ph. 202.330.1994, ebcme@me.com

## VERIFICATION:

I Erik B. Cherdak, do hereby swear and affirm under penalty of perjury that I have read the foregoing pleadings and/or papers by me subscribed and that the facts therein stated are true to the best of my knowledge, information and belief. Additionally, I do hereby correspondingly verify and swear and affirm under penalty of perjury that the attached exhibits to this Complaint are true and accurate copies of the documents that they purport to be (save for any exhibit identifiers and redactions of personally identifying information of any kind).

Plaintiff
Date:

12

**From:** **Alexander, Nicole** Nialexander@mwe.com  📎
**Subject:** Pharmacy Vendor / Express Scripts
**Date:** January 8, 2019 at 5:05 PM
**To:** ebcherdak@gmail.com

Erik, it was nice speaking with you.  I have attached a temporary ID card and claim form for Express Scripts.  Please provide your pharmacy with the temporary ID card and member ID# 102244449524.

Until you locate your ID card in your mail, please note that Express Scripts has a member portal via www.express-scripts.com >> register.  After you register, you may view your ID card and view account history.

### NICOLE ALEXANDER
TEMPORARY BENEFITS COORDINATOR

McDermott Will & Emery LLP  The McDermott Building, 500 North Capitol Street, NW, Washington, DC 20001-1531

Tel +1 202 756 8270  |  Fax +1 202 756 8087

nialexander@mwe.com

Website | vCard | Twitter | LinkedIn | Blog

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

Please visit http://www.mwe.com/ for more information about our Firm.

📄 PDF     📄 PDF

McDermott Will     Manual Claim
and Em...ard.pdf   Form.pdf

*Exhibit 1*

**mwe.com**

January 2, 2024

VIA EMAIL AND MAIL

ebcherdak@gmail.com

Erik Cherdak
149 Thurgood Street
Gaithersburg, MD  20878

Re:     Medical Coverage Expiration

Dear Erik:

We are writing in response to your recent inquiries regarding your medical benefits.  This letter will serve as a response to the inquiries you have submitted to McDermott Will & Emery LLP (the "Firm") regarding your benefits under the Firm's group health plan (the "Plan").  Under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Plan administrator must operate the Plan in accordance with the Plan's legal document.

As you may recall, you terminated employment with the McDermott Will & Emery LLP (the "Firm") on August 23, 2017.  Upon termination, the Firm is obligated to offer you 18 months of coverage under COBRA and is not obligated to extend the coverage beyond that period, unless you experience a second COBRA qualifying event, which was not the case here.

In accordance with the Plan's terms, your post-termination medical coverage, under COBRA, should have ended no later than February 28, 2019.  As of March 1, 2019, you were not entitled to coverage under the Plan, through COBRA or otherwise.  For the reasons set forth herein and under applicable law and given that the Firm discovered this error only recently, your coverage under the Plan is being terminated effective January 31, 2024.  This extension of coverage is not required by law and is an accommodation the Firm is making to give you an opportunity to secure other coverage.

To assist you with finding other coverage before January 31, here are some resources that you can take advantage of:

- Health Advocate – www.healthadvocate.com,  866-695-8622
- Maryland Health Connection – www.marylandhealthconnection.gov  855-642-8572
- e-health – www.ehealthinsurance.com  888-212-6039

**McDermott**
**Will & Emery**

One Vanderbilt Avenue   New York NY 10017-3852   Tel +1 212 547 5400   Fax +1 212 547 5444
*US practice conducted through McDermott Will & Emery LLP.*


Exhibit 2

Erik Cherdak
January 2, 2024
Page 2

This is a non-exhaustive list and the Firm makes no representations or warranties as to the availability of coverage through these sources. You should consult with your own advisors as to the availability and tax consequences of any coverage you may obtain.

If you do not agree with the Firm's interpretation of the Plan's terms, you may submit a formal claim for benefits under the Plan. To do so, you must submit your claim for benefits in writing to the Plan administrator at 400 W. Lake Street, Suite 4000, Chicago, IL 60606. The Plan administrator will process the claim and either approve or disapprove it within 30 days of the date the claim is received. If special circumstances arise, the Plan administrator may extend its response deadline by 15 additional days. The Plan administrator's determinations shall be final and binding on all parties, except as otherwise provided by law.

Please let me know if you have any questions regarding the foregoing.

Sincerely,

Ruthlyn Alleyne
Director of Total Rewards

cc:     Chad Leonard
        Linda Doyle
        Kathleen Pearson



**McDermott
Will & Emery**

**From:** **Leonard, Chad** chad.leonard@mwe.com 📎
**Subject:** Response to your email
**Date:** January 23, 2024 at 4:13 PM
**To:** Erik Cherdak ebcherdak@gmail.com
**Cc:** Alleyne, Ruthlyn G. Ralleyne@mwe.com, Pearson, Kathleen kpearson@mwe.com, Doyle, Linda ldoyle@mwe.com

Mr. Cherdak,

Per the Firm's claim acknowledgment letter dated January 17, 2024, your questions are being reviewing in accordance with the claims and appeals rules of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Absent a contrary determination on review under ERISA, your coverage will terminate effective January 31, 2024, per the Firm's January 2, 2024 notice to you.

In response to your document request, please find attached the BlueCross BlueShield booklet applicable to your medical coverage that you are entitled to under ERISA.

As a reminder, you have until this Friday, January 26, 2024, to provide copies of any documents that support your claim of promises for indefinite post-termination medical coverage. Any questions can be included as part of any documentation that you provide.

Best regards,

Chad Leonard

CHAD LEONARD, MS PHR CEBS
Benefits Manager
McDermott Will & Emery LLP  100 N. West Street, Suite 1400, Wilmington, DE 19801
Tel +1 302 216 6536 | Email chad.leonard@mwe.com
Website | vCard | Twitter | LinkedIn

*****************************************************************************************************
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
*****************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

📄 **PDF**

039191 Benefits
Bookle...22.pdf

*Exhibit 3*

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**AT WASHINGTON**

Erik B. Cherdak
149 Thurgood Street
Gaithersburg, Maryland 20878
202.330.1994
ebcme@me.com,

  *Plaintiff,*

  *v.*

McDermott, Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531 202.756.8000
www.mwe.com,

  *Defendant.*

Case No. _____

**PLEASE RUSH TO:**
**JUDGE-IN-CHAMBERS**

**PLAINITFF'S COMBINED**
**EMERGENCY MOTION AND BRIEF IN**
**SUPPORT SEEKING**
**A TEMPORARY RESTRAINING ORDER**

**-EMERGENCY REVIEW REQUESTED-**

**-DEFENDANT HAS BEEN SERVED-**
**Contact Information for Defense Counsel:**
**Mr. J. Christian Nemeth**
**McDermott, Will & Emery, LLP**
**Ph. 312.984.3292**
**E: jcnemeth@mwe.com**

## PLAINITFF'S COMBINED EMERGENCY MOTION AND BRIEF IN SUPPORT SEEKING A TEMPORARY RESTRAINING ORDER

*In accordance* with DC R. Civ. P. Rule 65, Plaintiff herein moves the Court on an **EMERGENCY BASIS** and herein applies for a **Temporary Restraining Order** (a "TRO") and all appropriate and just equitable and injunctive relief necessary **_to stop_** the Defendant from materially breaching a contract formed in 2017 binding between the parties and that provides that Defendant arrange, provision, and administer certain health insurance benefits to Plaintiff and his family.  Defendant has threatened to materially breached and has threatened to engage in additional material anticipatory breaches of the parties' contract and to  This Motion and application for a TRO has been submitted along with a Complaint for Breach of Contract in the above-captioned action commenced by the submission of that Complaint.  Plaintiff herein incorporates by reference the points of fact and authorities set out in Plaintiff's Complaint along with the exhibits and their content as attached to that Complaint as if re-attached hereto.  This Motion has been VERIFIED in accordance with Rule 65 notwithstanding that Defendant and its counsel have been notified and provided with copies of all filings related to this

case. Counsel for Defendant, Mr. J. Christian Nemeth, has been served with all papers submitted to the Court to date and he has represented that he will accept service of process on behalf of the Defendant. *See* Exhibit A (Email from Mr. Nemeth dated January 25, 2024 indicating his consent to service in this case).

Although the Court may grant the relief sought herein on an *ex parte* basis, Plaintiff has corresponded with Defendant and its in-house counsel and other staff concerning within the Defendant's organization about this case and Plaintiff's actions to commence the instant lawsuit. Plaintiff has provided Defendant's Counsel's, Mr. J. Christian Nemeth, contact information to the Court next to the caption of this Motion for a TRO and in Exhibit A so that the Court, so as to facilitate a a virtual hearing. Plaintiff has committed to Defense Counsel to keep them apprised of events and actions of the Court in connection with this case in these nascent stages and certainly during the instant TRO phase of the case to maintain the *status quo*. Plaintiff makes no representations as to Defendant's positions than as otherwise alleged in Plaintiff's Complaint submitted contemporaneously herewith. Additionally, Plaintiff discussed this Matter with Mr. Paul Thorn, law clerk in this Court's JIC Office, in advance of filing and Plaintiff has been instructed to inform JIC upon filing and will do so by email after such filing is perfected electronically. The Court is informed that such electronic filing is intended to take place on Friday, January 26, 2024 and shall include Plaintiff's Complaint with Exhibits 1-3, this Motion for a TRO (on notice and service) attaching a PROPOSED ORDER, a Civil Information Sheet, and all fees to be paid.

Plaintiff respectfully requests the GRANTING of this Application for a TRO to maintain the status quo until such time as the parties may be heard relative to their respective positions in this case. A Proposed Order is attached. Plaintiff next addresses the requirements for seeking a TRO/Preliminary Relief in this Honorable Court and in accordance with law governing such applications:

## INJUNCTIVE RELIEF IS NECESSARY
## TO AVOID ADDITIONAL IRREPARABLE HARM

### A. Controlling Authority Governing TRO's and Preliminary Injunctive Relief

DC R. Civ. P. Rule 65 mandates that this Court "The court may issue a preliminary injunction only on notice to the adverse party." Alternatively, the Court may grant a TRO without notice to an adverse party (i.e., ex parte). In this case notice of all filings and of the actual dispute between the parties giving rise to the need for emergent injunctive

relief is not in issue as Plaintiff has provided notice, copies of all papers filed in this Court and is actively involved in notifying Defense Counsel of all events so that Defense Counsel can participate in an emergent hearing that must take place sooner than later to maintain the status quo and certainly before **Wednesday, January 31, 2024** so as to prevent immediate and irreparable harm from befalling on Plaintiff and the members of his family by Defendant's wrongful materially beaching conduct to terminate Plaintiff's contractually informed and established health insurance benefits under Defendant's Group Health Insurance Plan operated through Blue Cross Blue Shield of Illinois.

In *District of Columbia v. Eastern Trans-Waste of Maryland, Inc.*, 758 A.2d 1, 14-15, 21 (D.C. 2000), for example, it was held that a party applying for preliminary injunctive relief must demonstrate: "(1) that there is a substantial likelihood [Plaintiff] will prevail on the merits; (2) that [Plaintiff] is in danger of suffering irreparable harm during the pendency of the action; (3) that more harm will result to [Plaintiff] from the denial of the injunction than will result to the defendant from its grant; and, in appropriate cases, (4) that the public interest will not be disserved by the issuance of the requested order."). (quoting *Wieck v. Sterenbuch*, 350 A.2d 384, 387 (D.C. 1976)) (footnote omitted) (top-most quote cleansed by Plaintiff and made to reference "Plaintiff" instead of pronoun "it" as used in original text). Plaintiff next addresses those requirements in detail with reference to the facts articulated and pleaded in Plaintiff's Complaint that have been incorporated herein by reference.

### B. All Requirements for a TRO/Preliminary Injunctive Relief Favor the Plaintiff

### (1) Plaintiff will Prevail On the Merits of his Breach of Contract Claim

As set out in Plaintiff's Compliant filed contemporaneously herewith, there is no question that the Plaintiff has pleaded and will be able to prove the existence of an executory contract of severance entered into and binding upon the Parties as of August 2017. That contract largely formed by the oral representations and actions by the parties included promises by Defendant to provide uninterrupted health insurance benefits to Plaintiff and his family at no cost to Plaintiff and upon good and valuable consideration in the form of releases, forbearances, and agreements to remain silent as to matters concerning in-office conduct committed by a member of the firm as flowing from Plaintiff to Defendant. Until December 2023, and without any prior notice, Defendant took it upon itself to arrange for the cancellation of Plaintiff's health insurance benefits that Defendant was otherwise contractually and dutifully obligated to provide to the Plaintiff and his

family on consideration of the mutual promises, covenants and representations and actions by the parties in August 2017. Proof of the contract of severance and its terms that Defendant, a multi-national law firm with dedicated HR professionals and departments across the world, is also present in the actions and course of dealing between the parties since August 2017 wherein Plaintiff and his family have received and relied upon their firm-provided health insurance benefits since that time and until the present without interruption, notwithstanding communications between the Parties concerning such benefits, Plaintiff's and his family's use of those benefits, detrimental reliance, forming of medical and other healthcare relationships involving specialized care and installations of complex self-reporting healthcare tracking equipment communicating with service providers over broadband and private networks on a daily basis and that are installed in Plaintiff's home. Defendant had and has no contractual right to terminate Plaintiff's contractually provided health insurance benefits that have never been identified as "COBRA" benefits but, instead, as contractual benefits as part of a contract of severance between and binding the Parties.

As explained in detail in Plaintiff's Complaint, the contract binding the parties as formed and entered into by the parties in person in Washington, DC in August 2017, clearly and immutably established Defendants' executory obligation to arrange, provision and ensure that Plaintiff (and his family) would be covered by Defendant's Group Health Insurance Plan operated with Blue Cross Blue Shield of Illinois ("BCBS-IL"). Plaintiff (and the members of Plaintiff's family) have been covered with said health insurance benefits including for major medical, health, dental and related service offerings (e.g., specialized programs and care including, but not limited to, specialized, coached and managed preventative and educational diabetes care offered through BCBSIL and its service partners (e.g., OMADA Diabetes and Health Management Services). Plaintiff's health insurance is a very personal health care plan with particular and special relationships orchestrated at Defendant's direction and through BCBS-IL and include, for example and not by way of limitation, customized health-management programs including relationships between Plaintiff and members of specialized care teams that are now threatened with immediate disruption by Defendants announced anticipatory breach of contract and threatened action to take away benefits that Defendant is contractually obligated to provide to Plaintiff (and his family) at no cost to the Defendant on consideration that flowed from the Plaintiff to the Defendant at the time

4

the Parties formed and installed their arms' length agreement and binding contract. Each and every day, Plaintiff is required to check in with his health coach at OMADA and to provide health tracking and health metrics provided by OMADA and installed in Plaintiff's home. Defendant's past and threatened breach of contract will immediately sever Plaintiff's healthcare, terminate Plaintiff's health insurance benefits and otherwise leave Plaintiff mid-care and observation with major health issues that are ongoing, are complicated by Plaintiff's current orders to undergo surgery on February 8, 2024 at Georgetown University Hospital ("GUH"), and otherwise. Because of the specialized nature of Plaintiff's health insurance benefits, his clear reliance on the same to utilize his health insurance benefits any act by the Defendant to interfere with Defendant's healthcare such as by Defendant's announced and anticipatory breach will irreparably harm Plaintiff and his family members that have all detrimentally relied on such healthcare benefits to date. Such healthcare benefits as provided as dutifully and contractually provided by Defendant have been consistently provided since August 2017 and at no time has Defendant indicated an intention to terminate or cancel Plaintiff's vital health insurance benefits that Defendant knows are being relied upon daily and consistently for more than four years without any interruption or fault caused by Plaintiff. Communications within the period from August 2017 to present and exemplifying the fact that Plaintiff was and is covered under the health insurance benefits to be contractually provided to Plaintiff by Defendant also are exemplified in Exhibit 1 to Plaintiff's Complaint—an email sent by Plaintiff to Defendant concerning health insurance benefit plan details, insurance ID cards, etc. to which Defendant recognized the existence of insurance coverage provided to Plaintiff and his family.

At no time other than in December 2023 has Plaintiff learned that Defendant sought to cancel or terminate Plaintiff's benefits and that Plaintiff's knowledge was learned for the first time during a routine online visit to Plaintiff's BCBS-IL Member Portal in December, 2023. Plaintiff immediately contacted Human Resources at Defendant's Washington, DC office and a cascade of admissions and acknowledgements of Plaintiff's health insurance benefits were made by Defendant's personnel that ultimately resulted in Defendant assuring Plaintiff that his coverage should not be terminated and that it would not be so and that the threatened termination would be immediately rectified. It was not and now Plaintiff faces termination of benefits wholly to benefit the Defendant while causing irreparable harm through anticipatory breach to

take place on January 31, 2024—the date that Defendant has threatened to "pull the plug" on Plaintiff's health insurance benefits originally contracted to exist and to be provided by Defendant per the terms of their contract borne from Defendant's offer to provide such insurance in exchange for certain valuable consideration flowing from Plaintiff to Defendant including, but not limited to, releases of claims and causes of action as agreed between the parties in oral communications in August 17, 2017. Again, at no time has Defendant claimed to have no contractual obligation to provide Plaintiff and his family with the health insurance benefits they have detrimentally relied upon since August 17, 2024. And, in keeping with the Parties' contract entered into in August 2017, Defendants have never required Plaintiff to pay for his health insurance coverage as Plaintiff conveyed good and valuable consideration

On the facts and under canonical law of contracts applicable in this Court, Plaintiff will certainly prevail on his breach of contract claim both on a theory of past material breach and on a theory of material anticipatory breach such that Plaintiff is entitled to all forms of relief justified under law – and at this time, emergent injunctive relief to ensure the status quo and to prevent the Defendant from interfering with Plaintiff's and his family's health care needs by wrongfully terminating Plaintiff's health insurance benefits in clear violation of the contract that provides for the same and which the Defendant is contractually obligated to provide to the Plaintiff.

### 2. Plaintiff Will Suffer Immediate and Irreparable Harm Without a TRO

In Point No. 1, *supra*, Plaintiff explains the health insurance coverage and benefits that Defendant promised to provide under the parties' contract of severance entered into by the Parties in August 17, 2023. Plaintiff's health insurance coverage is a very personal and customized health care plan with particular and special relationships orchestrated at Defendant's direction and through BCBS-IL and include, for example and not by way of limitation, customized health-management programs including relationships between Plaintiff and members of specialized care teams that are now threatened with immediate disruption by Defendants announced anticipatory breach of contract and threatened action to take away benefits that Defendant is contractually obligated to provide to Plaintiff (and his family) at no cost to the Defendant on consideration that flowed from the Plaintiff to the Defendant at the time the Parties formed and installed their arms' length agreement and binding contract. Each and every day, Plaintiff is required to check in with his health coach at OMADA and to provide health tracking and health metrics

provided by OMADA and installed in Plaintiff's home. Defendant's past and threatened breach of contract will immediately sever Plaintiff's healthcare relationships, terminate Plaintiff's health insurance benefits and otherwise leave Plaintiff care-in-progress and observation of major health issues that are ongoing be complicated by Plaintiff's current orders to undergo surgery on February 8, 2024 at Georgetown University Hospital ("GUH"), and otherwise. Because of the specialized nature of Plaintiff's health insurance benefits, his clear reliance on the same to utilize his health insurance benefits such as by being encouraged by Defendant and BCBS-IL to form specialized relationship with Medical and Healthcare Providers working in partnership with Defendant and BCBS-IL (e.g., OMADA Corporation and its personally arranged healthcare coaches assigned to Plaintiff) any act by the Defendant to interfere with Defendant's healthcare such as by Defendant's announced and anticipatory breach will irreparably harm Plaintiff and his family members that have all detrimentally relied on such healthcare benefits to date. Such irreparable harm will result from immediate termination of provider-relationships between Plaintiff and his care teams, disrupt surgical plans and courses of treatment that have been in place and which are ongoing, disruption of critical care for life-altering medical conditions (e.g., stroke, cancer, and diabetes), and will cause Plaintiff to be unable to obtain corresponding replacement insurance that preserves vital patient-doctor-provider relationships built over years and especially with several departments at GUH, to be prevented from maintaining ongoing care and healthcare management provided at Defendant's direction and through BCBS-IL and its partners (e.g., OMADA, etc.), etc. Plaintiff's surgeon's office advised Plaintiff on January 25, 2024 that Defendant working through BCBS-IL had arranged to notify GUH billing that Plaintiff's Insurance had been terminated and that no further claims could be made on Plaintiff's health insurance coverage after January 31, 2024—Plaintiff has spent months preparing for surgery on February 8, 2024 and has been forced to deal with the consequences of Defendant's threats of and actual material breaches of the Parties' contract formed on August 17, 2017 while simultaneously attempting to manage through relational destruction directly caused by Defendant's material breaches and threatened continued acts to material breach the Parties' contract and Defendant's contractual duties and obligations owed to Plaintiff and his family.

In determining whether to grant preliminary injunctive relief (e.g., a TRO, a Preliminary Injunction or any other equitable order prior to an full and fair opportunity

to adjudicate a case on its merits), it has been recognized that: "While it is fundamental to the granting of an injunction that the court make specific findings on all prerequisites for such relief, the most important inquiry is that concerning irreparable injury. This is true because the primary justification for the issuance of a preliminary injunction "is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Authority v. Callaway*, <u>489 F.2d 567, 576</u> (5th Cir. 1974). An injunction should not be issued unless the threat of injury is imminent and well-founded, and unless the injury itself would be incapable of being redressed after a final hearing on the merits. ") *Wieck v. Sterenbuch*, 350 A.2d 384, 387-88 (D.C. 1976). Here, there is no way to fully determine the levels and extents of the irreparable harm that will befall upon the Plaintiff if Defendant is not stopped and enjoined from terminating Plaintiff's health insurance benefits and coverage for which he contractually and on which he detrimentally relied (after he gave good and valuable consideration to allow Defendant to avoid significant litigation and claims. No money can buy a health insurance policy like the Plaintiffs as offered and utilized by Plaintiff and his family to date. And no amount of money can re-create the relationships with medical and healthcare providers that were encouraged and arranged by Defendant in partnership with BCBS-IL such as those that managed by care-team providers at OMADA through partnership with BCBS-IL and in combination with Doctors and staff at Howard University Hospital (with automatic diabetes management, monitoring and blood glucose and insulin usage reporting passively with no action required by Plaintiff) and Georgetown University Hospital that is currently relying on Plaintiff's health insurance benefits and coverage as provided by the Defendant and which is now be threatened to be abruptly terminated without cause, without breach by the Plaintiff, and in willful, fraudulent violation of the Parties' contract in which Defendant agreed at arm's length to provide such benefits for the good and valuable consideration it received from the Plaintiff in August 2017.

Plaintiff's healthcare benefits dutifully and contractually provided by Defendant have been so consistently provided since August 2017 and at no time has Defendant indicated an intention to terminate or cancel Plaintiff's vital health insurance benefits that Defendant knows are being relied upon daily and consistently for more than four years without any interruption or fault caused by Plaintiff. And, also at no time, has Defendant given a reason (in any contemporaneous writing to the Parties' August 2017 contract or otherwise) for a demonstration of why and under any specifically binding legal construct

providing a contractual ability to seeks to materially breach the Parties' contract of severance and to terminate Plaintiff's and his family's health insurance benefits and coverage.   Instead of any sound explanation, Defendant has disingenuously and fraudulently sought to throw-up stories and tales of "mistake" and a meritless claim that Plaintiff's contractual right to his insurance benefits will be treated as some kind of denial of substantive service coverage under Plaintiff's insurance policy, benefits, coverage for which no ERISA or other law is applicable.  Defendant has engaged in bad-faith and comes here after attempting to dupe the Plaintiff into believing that Defendant has some kind of authority to cancel and terminate Plaintiff's health insurance benefits and claims when, in fact, Defendant has no such authority and, to the contrary, is contractually bound to provide Plaintiff and his family with such health insurance benefits and coverage.  This Court should not countenance willful and material breaches of contract when the Defendant has acted with unclean hands and to use ridiculous, untruthful claims to threaten Plaintiff and his family with immediate and irreparable harms.

### 3. The Balance of the Hardships/Harms Clearly Leans in Plaintiff's Favor

As demonstrated by the actions of the parties in December 2023, when Defendant was alerted to Plaintiff's knowledge of Defendant's clandestine acts to arrange for termination of Plaintiff's health insurance benefits then as of December 31, 2023, Defendant turned around "flicked a switch" and reinstated Plaintiff's health insurance benefits without any gap in insurance. Defendant now threatens again to "flick" the same switch and terminate Plaintiff's insurance benefits as a material breach and for such termination to become effective on January 31, 2024.  Defendant already agreed by contract to provide Plaintiff and his family with health insurance coverage at no cost to Plaintiff on an ongoing basis and upon Plaintiff having conveyed good and reliable consideration in exchange for the provision of such health insurance benefits and coverage. Defendant's material breach and anticipated material breach and Defendant's ability to prevent such insurance termination is wholly and completely in control of the Defendant and beyond any say by the Plaintiff. On balance, Plaintiff's irreparable harm (explained supra) by Defendant's wrongful and material contractual breaches that it has threatened to continue is far outweighed by Defendant being prevented from flicking any switch in some computer system that controls Plaintiff's insurance benefits and coverage. Plaintiff posits that Defendant will not be harmed in any way by being ordered to maintain the status quo and to retain Plaintiff on the active rolls of Defendant's health

insurance plan as administered on behalf of BCBS-IL.   The balance of the harms completely weighs in favor of the Plaintiff with the Defendant being unable to assert any harm and certainly not any such harm that could even be mitigated by security imposed by this Court—as Defendant is required to pay for and provide Plaintiff with his contractually promised health insurance benefits and coverage at no ongoing cost to Plaintiff in any way.   The *status quo* must be maintained while the Parties' prepare for a full and complete hearing on the merits of this case and after due and proper discovery.

### 4. The Public's Interest Favors the Granting of Injunctive Relief

There can be no question that contracts of all kinds and especially those directly affecting the medical and health care of people party to such contracts.   The contract in-suit is one establishing duties of the Defendant to arrange and provide health insurance benefits and coverage to Plaintiff (and his family).   That contract has been in place for more than five years and should not be breached by either of its parties.   The public has a compelling interest that court's honor, uphold, and enforce contracts generally and, according to Plaintiff, a special duty to ensure that contracts providing for healthcare are enforced to their terms and to avoid the kinds of immediate and irreparable harm faced by Plaintiff and his family as a result of the acts of material breach by Defendant to date and which are compounded by threats of future material breaches that, left unchecked, will lead to the irreparable harms contemplated and discussed herein and that will absolutely befall on the Plaintiff and his family should the Defendant be allowed to materially breach the Parties' contract, to run afoul of Defendants' covenants and contractual obligations and duties, and, more generally, to disrupt the private relations among folks party to contract on Defendant's own whims.   The Public interest is best served by GRANTING emergent injunctive relief to ensure that no further irreparable harm is caused by the Defendant to befall on Plaintiff and his family nor to make a mockery of promises to provide health insurance coverage on which folks in our community rely and make important life-altering decisions affecting their health and medical care with the providers of their choice.

**IN CONCLUSION**, Plaintiff respectfully request that this Honorable Court GRANT this his application for a TRO on facts clearly favoring such emergent injunctive relief.   This Motion and all associated papers attached to and which this Motion has been attached have been served on Defendant's Counsel as per agreement of the parties.

Telephone numbers and email addresses to reach the Plaintiff and Defense Counsel are repeated below the signature block that follows. A Proposed ORDER for the Court's Review also is attached.

*It is therefore,*

Respectfully submitted,

Erik B. Cherdak      Date: 1/26/2024

149 Thurgood Street, Gaithersburg, Maryland 20878, Ph. 202.330.1994, ebcme@me.com

## CONTACT INFORMATION FOR THE PARTIES
## FOR PURPOSES OF AN EMERGENT HEARING AND OTHERWISE:

| For the Plaintiff (*Pro Se*): | For the Defendant: |
|---|---|
| Telephone: 202.330.1994 | Telephone:  312.984.3292 |
| Email: ebcherdak@gmail.com | E: jcnemeth@mwe.com |

## VERIFICATION

I Erik B. Cherdak, do hereby swear and affirm under penalty of perjury that I have read the foregoing pleadings and/or papers by me subscribed and that the facts therein stated are true to the best of my knowledge, information and belief. Additionally, I do hereby correspondingly verify and swear and affirm under penalty of perjury that the attached exhibits to this Complaint are true and accurate copies of the documents that they purport to be (save for any exhibit identifiers and redactions of personally identifying information of any kind).

_____ Plaintiff

Date: 1/26/2024

## CERTIFICATE OF SERVICE

I, Erik B. Cherdak, do hereby certify that on January 26, 2024, I caused a copy of this paper (with exhibits, if any) to be sent to the following person by email as agreed between the parties.

Mr. J. Christian Nemeth
McDermott, Will & Emery, LLP
Ph. 312.984.3292
E: jcnemeth@mwe.com
333 SE 2nd Avenue, Suite 4500, Miami, FL 33131-2184
Tel +1 312 984 3292  |  Mobile +1 773 870 0323  |  Email jcnemeth@mwe.com

Date: 1/26/2024

**From: Nemeth, J. Christian** jcnemeth@mwe.com  📎
**Subject:** Fwd: Response to your email
**Date:** January 25, 2024 at 7:08 AM
**To:** ebcherdak@gmail.com
**Cc:** Rogaczewski, Joshua jrogaczewski@mwe.com

Erik, I am authorized to accept service on behalf of McDermott. Thanks.

CHRISTIAN NEMETH
Partner

McDermott Will & Emery LLP  333 SE 2nd Avenue, Suite 4500, Miami, FL 33131-2184
Tel +1 312 984 3292 | Mobile +1 773 870 0323 | Email jcnemeth@mwe.com

McDermott Will & Emery LLP  444 West Lake Street, Suite 4000, Chicago, IL 60606-0029
Email jcnemeth@mwe.com
Website | vCard | Twitter | LinkedIn

EXHIBIT A

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**AT WASHINGTON**

Erik B. Cherdak
149 Thurgood Street
Gaithersburg, Maryland 20878
202.330.1994
ebcme@me.com,

       *Plaintiff,*

       *v.*

McDermott, Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531 202.756.8000
www.mwe.com,

       *Defendant.*

Case No. _____

**[PROPOSED]**

**O R D E R**

      Before the Court is Plaintiff's Motion and application for a Temporary Restraining Order (a "TRO") filed on an emergency basis. For good cause shown in Plaintiff's moving papers and especially on a finding that Plaintiff has demonstrated a threat of immediate and irreparable harm and all other requirements applicable for granting temporary injunctive relief, the Motion is GRANTED and the Court ORDERS as follows:

1. The TRO entered hereby shall last from _____ at ____AM/PM until _____ at ____AM/PM (the "term" of this ORDER);

2. Defendant and its agents and all those acting in concert with Defendant shall be temporarily restrained from taking any action to cancel and/or terminate Plaintiff's health insurance benefits and coverage administered by Defendant and carried through BCBS-IL and any of its partner providers or take any actions inconsistent with normally maintaining Plaintiff's health insurance benefits and coverage so as to keep Plaintiff's health insurance benefits and coverage in full force and effect during the term of this ORDER or until further ORDER of the Court per appropriate scheduling between the Parties and the Court; and

3. The Clerk of this Court is direct to schedule a merits hearing on Plaintiff's Motion to take place within no more than 14 days of entry of this ORDER and before the termination of the term defined herein has expired.

   **IT IS SO ORDERED.**


_____
Superior Court Judge