UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Erik B. Cherdak**,<br><br>Plaintiff,<br><br>v.<br><br>**McDermott Will & Emery LLP**,<br><br>Defendant. | Case 1:24-cv-00254-CJN |

# McDERMOTT WILL & EMERY LLP'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

Joshua David Rogaczewski
(D.C. Bar No. 490468)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, District of Columbia 20001
202.756.8195
202.591.2757 fax
jrogaczewski@mwe.com

*Counsel to McDermott Will & Emery LLP*

## TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

FACTUAL BACKGROUND ..... 2

ARGUMENT ..... 3

I. Mr. Cherdak Does Not Have a Substantial Likelihood of Success on the Merits of His Claim for Perpetual, Premium-Free Health Benefits. ..... 4

A. Mr. Cherdak Has Not Established a Severance Agreement Entitling Him to Continuation of McDermott-Provided Health Benefits. ..... 4

B. Mr. Cherdak's Claim Also Fails Because He Has Not Exhausted His Administrative Remedies Under ERISA. ..... 7

II. Mr. Cherdak's Improper Acceptance of Health Benefits for Six-Plus Years Tips the Balance of Equities in McDermott's Favor. ..... 8

III. The Public Interest Is Not Furthered by Enjoining McDermott on the Word of an Untruthful Individual. ..... 9

CONCLUSION ..... 10

CERTIFICATE OF SERVICE ..... 11

INDEX OF EXHIBITS ..... 12

# TABLE OF AUTHORITIES

**Cases**

*Aamer v. Obama*,
742 F.3d 1023 (D.C. Cir. 2014) ........................................ 3, 4

*Alese v. McDonough*,
Civ. Action No. 23-2925 (TJK), 2023 WL 9418276 (D.D.C. Oct. 27, 2023) ........................ 6

*Cox v. Graphic Commc'ns Conf. of Int'l Bhd. of Teamsters*,
603 F. Supp. 2d 23 (D.D.C. 2009) ........................................ 7, 8

*Davis v. Pens. Ben. Guar. Corp.*,
571 F.3d 1288 (D.C. Cir. 2009) ........................................ 3

*Gobeille v. Liberty Mut. Ins. Co.*,
577 U.S. 312 (2016) ........................................ 7

*Gomez v. Kelly*,
237 F. Supp. 3d 13 (D.D.C. 2017) ........................................ 3

*M & G Polymers USA, LLC v. Tackett*,
574 U.S. 427 (2015) ........................................ 5

*Miller v. Gruenberg*,
Civ. Action No. 1:21-cv-03035 (CJN), 2022 WL 20699638 (D.D.C. Aug. 24, 2022) ........................................ 4

*Office of Disciplinary Counsel v. Cherdak*,
No. 50 DB 2021, slip op. (Pa. Sup. Ct. Disciplinary Bd. Aug. 29, 2022) ........................ 7, 9

*Robinson v. Gardiner*,
76 A.2d 354 (Md. 1950) ........................................ 5

*Sibley v. Obama*,
810 F. Supp. 2d 309 (D.D.C. 2011) ........................................ 3

*Sprague v. Gen. Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) ........................................ 5

*Stewart v. Nat'l Educ. Ass'n*,
471 F.3d 169 (D.C. Cir. 2006) ........................................ 7

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........................................ 3

Stripped of Erik Cherdak's bluster and legalese, the issue in this case is simple. Mr. Cherdak has been receiving health benefits from McDermott Will & Emery LLP to which he is not entitled, and he wants to preserve those benefits as long as possible. His acceptance of these benefits for six-plus years was dishonest. His effort to force McDermott to continue to provide those benefits is also dishonest.

McDermott inadvertently and mistakenly did not remove Mr. Cherdak from the firm's group health plan when the firm terminated him for misconduct in August 2017. When it discovered this error last December, McDermott started the process of terminating Mr. Cherdak's participation in the plan, which is set to occur today. This lawsuit represents Mr. Cherdak's last-ditch effort to continue to benefit—at the firm's cost—from McDermott's health plan. Relying on vague allegations of an oral agreement and the firm's six-year-long mistake, Mr. Cherdak urges this Court to find that McDermott agreed to provide Mr. Cherdak with premium-free health benefits for his lifetime. The only "evidence" of this agreement is the word of Mr. Cherdak, someone found by another federal court to be deeply untruthful. In fact, no such agreement exists.

Accordingly, Mr. Cherdak's claim against McDermott will fail. In the context of his motion for temporary injunctive relief, however, it is sufficient for the Court to find that Mr. Cherdak is unlikely to succeed on the merits. Because he cannot satisfy the likelihood-of-success factor, the equities of this matter are less important, but those, too, weigh in McDermott's favor. Because there was no agreement, Mr. Cherdak comes to the Court with unclean hands. He knew that he was not entitled to continued health benefits from McDermott, but he accepted the benefits anyway, taking advantage of the firm's mistake and shifting the costs of his benefits to

the firm and the other participants in the plan. That conduct should bar him from relying on equity in this matter.

McDermott urges the Court to deny Mr. Cherdak's request for temporary injunctive relief preventing McDermott from removing Mr. Cherdak from its benefit plan, an action McDermott intended to do six-plus years ago.

## FACTUAL BACKGROUND

McDermott hired Mr. Cherdak on January 19, 2016, as a patent agent. (Ex. 1, Smith Decl. ¶ 3.) Less than two years later, on August 23, 2017, McDermott terminated Mr. Cherdak for substantial evidence of billing-related misconduct. (Ex. 2, Steindler Decl. ¶ 2; Ex. 1, Smith Decl. ¶ 3; Ex. 3, Alleyne Decl. ¶ 3.) During the meeting where the firm terminated him, no one discussed a severance agreement between the firm and Mr. Cherdak. (Ex. 2, Steindler Decl. ¶ 2.) Nor was an agreement discussed after the meeting, when firm personnel escorted Mr. Cherdak to his office to collect his personal effects and then from McDermott's office. (*Id.* ¶ 3.)

"McDermott does not provide [former] employees with severance-based remuneration or benefits without a written agreement that includes a release." (Ex. 1, Smith Decl. ¶ 4.) When such arrangements are made, the firm places the written agreement in the former employee's personnel file. (*Id.* ¶ 5.) Mr. Cherdak's employee file contains no written severance agreement. (*Id.*) While he did not qualify for retiree-medical coverage, McDermott did offer Mr. Cherdak the option to receive health benefits under COBRA for eighteen months. (*Id.* ¶¶ 8, 10.) Mr. Cherdak declined COBRA coverage. (*Id.* ¶ 8.) Due to an administrative error, Mr. Cherdak remained a participant in McDermott's group health plan. (Ex. 1, Smith Decl. ¶ 11; Ex. 3, Alleyne Decl. ¶ 3.)

McDermott discovered its error in December 2023 after Mr. Cherdak contacted McDermott about his benefits. (Ex. 1, Smith Decl. ¶ 11.) On January 2, 2024, McDermott

informed Mr. Cherdak that it would terminate his participation in the firm's plan, a decision Mr. Cherdak challenged by making a claim for continued eligibility. (Ex. 3, Alleyne Decl. ¶ 4.) As part of its review of his claim, McDermott invited Mr. Cherdak to provide evidence of his eligibility, but he provided no evidence. (*Id.*) McDermott, in its role as plan sponsor, made an initial claim determination under the Employee Retirement Income Security Act of 1974 on January 29, 2024. (*Id.*) Mr. Cherdak has approximately six months to appeal the firm's decision and provide additional evidence, and the firm has roughly two months to decide an appeal by Mr. Cherdak. (*Id.* ¶ 5.)

## ARGUMENT

Mr. Cherdak seeks temporary injunctive relief, "an extraordinary remedy, one that should be granted only when the moving party, by a clear showing, carries the burden of persuasion." *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011). "The standard for obtaining injunctive relief through . . . a temporary restraining order . . . is well established." *Gomez v. Kelly*, 237 F. Supp. 3d 13, 14 (D.D.C. 2017). Mr. Cherdak must demonstrate (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that the proposed relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Mr. Cherdak has the "burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pens. Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009). But the likelihood-of-success factor is the "most important factor." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). As

explained below, Mr. Cherdak has not made a clear showing that he is entitled to temporary injunctive relief.[1]

## I. Mr. Cherdak Does Not Have a Substantial Likelihood of Success on the Merits of His Claim for Perpetual, Premium-Free Health Benefits.

As noted, Mr. Cherdak's likelihood of success on his breach-of-contract claim is the most important factor for the Court to consider. *See Aamer*, 742 F.3d at 1038. Two distinct grounds exist for the Court to find Mr. Cherdak is unlikely to succeed in his claim. *First*, he is unlikely to ever be able to prove the existence of a severance agreement in which McDermott promised to continue his health benefits forever and premium-free. *Second*, he has not exhausted his administrative remedies under ERISA, rendering his claim premature.

### A. Mr. Cherdak Has Not Established a Severance Agreement Entitling Him to Continuation of McDermott-Provided Health Benefits.

The foundation for Mr. Cherdak's claim is his allegation of "mutual promises made in a valid and binding contract formed between the Parties in August 2017." (ECF No. 4 Ex. A attach. 3, Ver. Compl. ¶ 16.) But aside from repeating in conclusory fashion the elements of a contract, Mr. Cherdak has not provided sufficient evidence of a contract between him and McDermott. His complaint references no written contract and does not attach one. The firm has no record of an agreement. (Ex. 1, Smith Decl. ¶ 5.) Mr. Cherdak did not provide it when invited during the ERISA process to support his claim for benefit eligibility. (Ex. 3, Alleyne Decl. ¶ 4.) This is because no written severance agreement exists.

---

[1] The firm does not concede Mr. Cherdak faces irreparable harm in the absence of his sought relief, but McDermott is not briefing the issue in the context of the instant motion because the compressed briefing schedule complicated the firm's ability to research Mr. Cherdak's ability to obtain new health benefits following January 31. That said, McDermott notes that the loss of benefits may not necessarily be an irreparable injury that is incapable of being remedied with damages. *See Miller v. Gruenberg*, Civ. Action No. 1:21-cv-03035 (CJN), 2022 WL 20699638, at *1 (D.D.C. Aug. 24, 2022).

Because he seeks lifetime, premium-free health benefits under McDermott's ERISA-governed plan, the lack of a clear, written agreement dooms Mr. Cherdak's claim. Under ERISA, courts erect a high burden for plaintiffs to clear in situations like this one. When a promise of perpetual benefits is alleged to be in a written agreement, "courts should not construe ambiguous writings to create lifetime promises," *see M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 441 (2015), and such a commitment "is not to be inferred lightly" and intent "must be found in the plan documents and must be stated in clear and express language," *see Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998). These rules, which the law sets forth for written agreements, apply with greater force to nonwritten agreements, which are inherently susceptible to misinterpretation. In any event, Mr. Cherdak does not—and cannot—point the Court to any clear and express promise by McDermott to provide him with the benefits he seeks to force McDermott to continue providing to him.

Indeed, Mr. Cherdak concedes there is no clear and express promise by McDermott when he argues that the "contract" was "largely formed by the oral representations and actions by the parties included [sic] promises by Defendant to provide uninterrupted health insurance benefits to Plaintiff and his family at no cost to Plaintiff." (ECF No. 4, Mot. TRO 3.) He alleges that McDermott agreed to pay for his health-insurance benefits "indefinitely . . . in exchange for severance-based consideration paid and provided by Plaintiff to Defendant under the Parties' mutually agreed covenants and contractual obligations agreed to between the parties in their contract of severance." (ECF No. 4 Ex. A attach. 3, Ver. Compl. ¶ 7.) These vague assertions are insufficient to establish McDermott agreed to provide Mr. Cherdak with any severance benefits, much less the lucrative ones Mr. Cherdak has improperly received for the past six years. *See Robinson v. Gardiner*, 76 A.2d 354, 356 (Md. 1950) ("[N]o action will lie upon a contract,

whether written or verbal, where such a contract is vague or uncertain in its essential terms."). For example, who at the firm made the promises on which Mr. Cherdak relies? To whom did Mr. Cherdak manifest his assent to the material terms? Who communicated McDermott's assent to the terms? When did these communications occur? When was the contract formed? What other terms does the contract contain? What consideration did Mr. Cherdak provide McDermott to support the firm's alleged promise to provide premium-free health benefits for life? Mr. Cherdak answers none of these questions in his verified complaint or his motion for temporary injunctive relief.[2] Contract law requires substantially more precision than what Mr. Cherdak offers, and without it his breach-of-contract claim fails.[3]

Finally, the Court should view with skepticism Mr. Cherdak's statements that a nonwritten agreement exists between him and McDermott. Mr. Cherdak's local supervisor states under oath that no severance agreement was negotiated or entered into, at least during the meeting where McDermott terminated Mr. Cherdak. (Ex. 2, Steindler Decl. ¶ 2.) And McDermott's local human resources manager states under oath that if an agreement existed between Mr. Cherdak it would be in his file and his file does not contain one. (Ex. 1, Smith Decl. ¶ 5.) That same professional told the District of Columbia unemployment-insurance apparatus that McDermott owed Mr. Cherdak no severance benefits. (*Id.* ¶ 9.) To be sure, Mr. Cherdak's

[2] Mr. Cherdak suggests in the Joint Status Report filed yesterday that the consideration was his agreement to not disclose further "certain in-office events" that he allegedly reported to the firm. (ECF No. 5, Jt. Status Rep. 2.) McDermott has no record of any such report by Mr. Cherdak. (Ex. 1, Smith Decl. ¶ 6.)

[3] Mr. Cherdak's pro se status provides him with no shelter. He has more formal legal training than the typical pro se litigant, and he is no stranger to federal litigation, having filed approximately sixty federal lawsuits, according to the Public Access to Court Electronic Records database. In any event, even pro se litigants must do more than what Mr. Cherdak has done here. *See Alese v. McDonough*, Civ. Action No. 23-2925 (TJK), 2023 WL 9418276, at *1 (D.D.C. Oct. 27, 2023).

allegations are "verified," but Mr. Cherdak has a strained relationship with the truth. In October 2022, the Pennsylvania bar ejected Mr. Cherdak from its ranks and collected instances in which Mr. Cherdak had been untruthful in at least three federal proceedings:

- In one proceeding, Mr. Cherdak's testimony was "wholly incredible" and "regularly contradicted by common sense and plain evidence before the court" and Mr. Cherdak's "character for untruthfulness was well-established at trial."
- Mr. Cherdak was found to have "lied" to a magistrate judge in another proceeding.
- Mr. Cherdak was found to have "perjured himself" in a proceeding by telling "repeated lies upon lies in the case" and in his disclosures to a federal bankruptcy court.

*Office of Disciplinary Counsel v. Cherdak*, No. 50 DB 2021, slip op. at 13–17 (Pa. Sup. Ct. Disciplinary Bd. Aug. 29, 2022), *adopted*, No. 2912 Disciplinary Dkt. No. 3 (Pa. Oct. 28, 2022).[4] Mr. Cherdak's prior adjudications of dishonesty demonstrate that his allegations against McDermott should not be taken at face value.

**B. Mr. Cherdak's Claim Also Fails Because He Has Not Exhausted His Administrative Remedies Under ERISA.**

The health benefits Mr. Cherdak used as an employee and after his for-cause termination have been administered through McDermott's group health plan governed by ERISA. (Ex. 3, Alleyne Decl. ¶ 2.) Accordingly, Mr. Cherdak's nonfederal claim alleging breach of a severance agreement is barred under ERISA preemption. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 326–27 (2016) (holding ERISA preempts Vermont statute as applied to ERISA plans); *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (state-law claims were preempted under ERISA preemption provision); *Cox v. Graphic Commc'ns Conf. of Int'l Bhd. of Teamsters*, 603

[4] *Available at* https://www.pacourts.us/assets/opinions/DisciplinaryBoard/out/50DB2021-Cherdak.pdf.

F. Supp. 2d 23, 35 (D.D.C. 2009) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." (internal quotation marks omitted)).

Further, this Court requires that "plaintiffs seeking a determination pursuant to ERISA of rights under their . . . plans must . . . exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." *Cox*, 603 F. Supp. 2d at 29 (internal quotation marks omitted) (first ellipsis added). On January 2, 2024, McDermott informed Mr. Cherdak that his participation in McDermott's group health plan would end on January 31, 2024. (Ex. 3, Alleyne Decl. ¶ 4.) On January 29, 2024, McDermott made an initial claim determination under ERISA, which confirmed termination of Mr. Cherdak's coverage. (*Id.*) This, however, does not end the ERISA process, and Mr. Cherdak can appeal the decision further, i.e., Mr. Cherdak has not exhausted his administrative remedies. (*Id.* at ¶ 5.) This justifies dismissal of his claim. *Cf. Cox*, 603 F. Supp. 2d at 31–32 (entering summary judgment against plaintiff for failing to exhaust ERISA administrative remedies).

## II. Mr. Cherdak's Improper Acceptance of Health Benefits for Six-Plus Years Tips the Balance of Equities in McDermott's Favor.

The equities in this matter do not favor Mr. Cherdak, who dishonestly accepted benefits to which he knew or should have known he was not entitled. As McDermott's employee, Mr. Cherdak participated in the firm's group health plan. (Ex. 3, Alleyne Decl. ¶ 3.) Like all employees, Mr. Cherdak would have contributed premiums to his health benefits. Several things happened in 2017 that render Mr. Cherdak's conduct dishonest. *First*, the firm terminated him for misconduct without a severance agreement, much less one that provided lifetime, premium-free benefits. (Ex. 1, Smith Decl. ¶ 5; Ex. 2, Steindler Decl. ¶¶ 2–3.) *Second*, Mr. Cherdak was

offered and did not accept continued coverage under COBRA. (*See* Ex. 1, Smith Decl. ¶ 8.) *Finally*, McDermott's administrative glitch, coupled with Mr. Cherdak's removal from payroll, left him with continued benefits but no longer paying regular premiums. (Ex. 1, Smith Decl. ¶ 11; Ex. 3, Alleyne Decl. ¶ 3.)

Mr. Cherdak declined the only continued coverage offered to him yet took advantage of continued benefits without the costs that every other participant has. It defies logic that Mr. Cherdak would believe that the firm would terminate him for cause and provide to him for free the benefits for which he paid premiums as an employee. Any reasonable—and honest—person would have brought this situation to McDermott's attention. Mr. Cherdak elected to lay low and see for how long he could extend his windfall. Such conduct makes him ineligible to claim equity when the firm realizes its mistake and takes the steps that it intended to take when it terminated him. It would be inequitable for Mr. Cherdak to continue receiving benefits to which he is not entitled.

## III. The Public Interest Is Not Furthered by Enjoining McDermott on the Word of an Untruthful Individual.

To grant him a temporary restraining order, the Court must credit Mr. Cherdak's vague and conclusory allegations of an unwritten severance agreement between him and McDermott. As discussed above, Mr. Cherdak provides no credible evidence to support such a finding. (*See supra* Part I.A.) But his strategy in this case is of a piece with what the Pennsylvania bar observed. It described Mr. Cherdak's pattern of "doing business" as attempting "to manipulate, confuse, embarrass, and bully those with whom he is dealing." *Cherdak*, No. 50 DB 2021, slip op. at 31. Indeed, the bar found testimony by Mr. Cherdak's former clients credible and sufficient to "establish[] that [Mr. Cherdak's] conduct undermined faith in lawyers, the legal profession and

the justice system." *Id.* at 20. Respectfully, rewarding such conduct with an injunction in this matter may further erode confidence in tribunals' abilities to separate truth from fiction.

## CONCLUSION

McDermott did not agree to provide Mr. Cherdak with premium-free, lifetime health benefits when the firm terminated him for misconduct. Accordingly, Mr. Cherdak is not likely to succeed on the merits of his claim and it would be inequitable to force McDermott to continue providing Mr. Cherdak with benefits to which he is not entitled. McDermott urges the Court to deny Mr. Cherdak's motion for a temporary restraining order.

Dated: January 31, 2024

Respectfully submitted,

/s/ Joshua David Rogaczewski
Joshua David Rogaczewski
(D.C. Bar No. 490468)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, District of Columbia 20001
202.756.8195
202.591.2757 fax
jrogaczewski@mwe.com

*Counsel to McDermott Will & Emery LLP*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **McDermott Will & Emery LLP's Opposition to Motion for Temporary Restraining Order** was served by electronic mail on January 31, 2024, on:

Erik B. Cherdak
149 Thurgood Street
Gaithersburg, Maryland 20878.

/s/ Joshua David Rogaczewski
Joshua David Rogaczewski

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | Declaration of Sophia Smith (Jan. 31, 2024) |
| 2 | Declaration of Thomas Steindler (Jan. 31, 2024) |
| 3 | Declaration of Ruthlyn Alleyne (Jan. 31, 2024) |